IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ELAINE V.,[1]

Plaintiff,

v. 1:25-cv-00760-JMR

FRANK BISIGNANO, Commissioner
of the Social Security Administration,

Defendant.

**MEMORANDUM OPINION AND ORDER**

THIS MATTER comes before the Court on Plaintiff Elaine V.'s Motion to Reverse and Remand (Doc. 14), which was fully briefed on March 31, 2026. *See* Docs. 21, 22. The parties consented to my entering final judgment in this case pursuant to 28 U.S.C. § 636(c) and FED. R. CIV. P. 73(b). *See* Docs. 5, 7, 8. Having meticulously reviewed the entire record and being fully advised in the premises, I find that the ALJ erred by failing to properly assess the opinion of consultative examiner Susan Giron, FNP. I therefore GRANT Plaintiff's motion and remand this case to the Commissioner for further proceedings consistent with this opinion.

## I. Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision[2] is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008). If substantial evidence supports

---

[1] Due to sensitive personal and medical information contained in this opinion, the Court uses only Plaintiff's first name and last initial. In so doing, the Court balances Plaintiff's privacy interest in her personal medical information, *United States v. Dillard*, 795 F.3d 1191, 1205–06 (10th Cir. 2015), and the public's interest in accessing the opinion, FED. R. CIV. P. 5.2(c)(2)(B).

[2] The Court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. § 404.981, as it is in this case.

the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). "The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (citation modified). The Court must meticulously review the entire record, but it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118 (quotation omitted). A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* (quotation omitted). While the Court may not reweigh the evidence or try the issues *de novo*, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005) (citation omitted). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

## II. Applicable Law and Sequential Evaluation Process

To qualify for disability benefits, a claimant must establish that he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be

expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a).

When considering a disability application, the Commissioner is required to use a five-step sequential evaluation process. 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the evaluation process, the claimant must show: (1) the claimant is not engaged in "substantial gainful activity"; (2) the claimant has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; *and* (3) the impairment(s) either meet or equal one of the Listings[3] of presumptively disabling impairments; *or* (4) the claimant is unable to perform his or her "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i–iv); *Grogan*, 399 F.3d at 1260–61. If the claimant cannot show that his or her impairment meets or equals a Listing but proves that he or she is unable to perform his or her "past relevant work," the burden of proof shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. *Id.*

**III. Background and Procedural History**

Plaintiff was born in 1965, completed two years of college, and previously worked as a property manager, medical records clerk, and hotel receptionist. AR 35, 51, 281–82, 293–94.[4] Plaintiff filed an application for Disability Insurance Benefits ("DIB") on September 21, 2020. AR 233–36. Plaintiff alleged disability since January 1, 2018, due to:

1. Depression, PTSD, anxiety, nervousnexx

[3] 20 C.F.R. pt. 404, subpt. P, app. 1.

[4] Document 9 is the sealed Administrative Record ("AR"). When citing to the record, the Court cites to the AR's internal pagination in the lower right-hand corner of each page, rather than to the CM/ECF document number and page.

2. Diabetes, insomnia, Stigmatism rt eye
3. Severe lower left pain, hip pain, degenerative disease
4. Abusive relationship; 14 yrs.no focus no concentration
5. Mental abuse w father. Shortness of breath, mood swings
6. Osteo arthritis, non alcoholic fatty liver, Blood disease,
7. Stomach linning thinning due to medications, bone disease
8. Urinary track infections; every two months due medications
9. Tremors in body, teeth/mouthCatter Cnt carry, lift objects
10. Bits tongue, clinch teeth, racing heart, pulpetations.

AR 280 (errors in original, spacing added).

The Social Security Administration ("SSA") denied Plaintiff's claim initially on September 9, 2021. AR 112–15. The SSA then denied her claim on reconsideration on August 29, 2023. AR 126–30. Plaintiff requested a hearing before an ALJ. AR 134–35. On September 30, 2024, ALJ Talia Timmins held a hearing. AR 44–67. Prior to the hearing, Plaintiff amended her alleged disability onset date to December 11, 2020. AR 395. ALJ Timmins issued her unfavorable decision on October 21, 2024. AR 18–43.

The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2024. AR 23. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since December 11, 2020, her amended alleged onset date. AR 24. At step two, the ALJ found that Plaintiff had the following severe impairment: "a mental impairment variously assessed as anxiety disorder, post-traumatic stress disorder (PTSD), and major depression that is recurrent." *Id.* The ALJ found Plaintiff's lateral epicondylitis of her right humerus, hepatic fibrosis/non-alcoholic liver cirrhosis, mild osteoarthrosis of the hands, and obesity were non-severe impairments. *Id.* Plaintiff also alleged she had Sjogren's syndrome; however, the ALJ determined that this was not a medically determinable impairment. AR 26.

At step three, the ALJ found that none of Plaintiff's impairments, alone or in combination, met or medically equaled a Listing. AR 27–28. Because the ALJ found that none of

the impairments met a Listing, the ALJ assessed Plaintiff's RFC. AR 28–35. The ALJ found Plaintiff had the RFC to

> perform a full range of work at all exertional levels but with the following non-exertional limitations: she can understand, remember, and maintain attention and concentration to carry out detailed but not complex instructions in two hour increments with normal breaks in the workday; she can have occasional interaction with the general public, frequent interaction with coworkers and frequent interaction with supervisors; she can use judgment to make detailed but not complex work-related decisions; she can deal with frequent changes in a routine work setting.

AR 28.

At step four, the ALJ found that Plaintiff did not have any past relevant work. AR 35. The ALJ found Plaintiff not disabled at step five because she could perform jobs that exist in significant numbers in the national economy—such as window cleaner, floor waxer, and kitchen helper. AR 35–36.

Plaintiff requested review by the Appeals Council. AR 226–28. On June 4, 2025, the Appeals Council denied the request for review. AR 11–16. Plaintiff timely filed her appeal to this Court on August 8, 2025.[5] Doc. 1.

## IV. Plaintiff's Claims

Plaintiff raises two arguments for reversing the ALJ's decision and remanding this case: (1) "the ALJ erred as a matter of law by failing to adequately assess the severity of Plaintiff's physical limitations at step 2 and failed to properly determine [Plaintiff's] RFC"; and (2) the ALJ failed to properly assess the opinions of consultative examiner Susan Giron, FNP and non-examining state agency consultants Nancy Armstrong, MD, and Renu Debroy, MD. *See* Doc. 14-2 at 7–25. The Court remands based upon the ALJ's failure to properly assess FNP Giron's

---

[5] A claimant has sixty days to file an appeal. The sixty days begins running five days after the decision is mailed. 20 C.F.R. § 404.981; *see also* AR 12.

opinion. The Court does not address the other claims of error, as they "may be affected by the ALJ's treatment of this case on remand." *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

## V. Analysis

Plaintiff argues that the ALJ failed to properly assess the opinion of FNP Giron, who conducted a consultative physical examination of Plaintiff and concluded that Plaintiff had no functional limitations resulting from her physical impairments. *See* Doc. 14-2 at 23–25, Doc. 22 at 5–6. Plaintiff raises two specific arguments. First, Plaintiff contends that the ALJ erred by failing to "resolve internal inconsistencies in [FNP Giron's] opinion before finding it persuasive." Doc. 14-2 at 23, Doc. 22 at 5–6. Second, Plaintiff argues the ALJ ignored other evidence in the record regarding her physical impairments that could "reasonably produce" physical functional limitations inconsistent with FNP Giron's opinion. *See* Doc. 14-2 at 24–25. In response, the Commissioner counters that FNP Giron's opinion was supported by her physical examination findings, which "revealed normal physical functioning." Doc. 21 at 9. The Commissioner also asserts that Plaintiff is improperly asking the Court to reweigh the ALJ's findings. *Id*.

For the reasons discussed below, the Court finds that the ALJ failed to sufficiently articulate the supportability and consistency of FNP Giron's opinion.

### A. Applicable Law

Social Security regulations define five categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings. 20 C.F.R. § 404.1513(a). The SSA

evaluates evidence it receives "according to the rules pertaining to the relevant category of evidence." *Id.*

Certain legal principles apply to all categories of evidence. The ALJ must demonstrate that he or she "considered all of the evidence" and must discuss not only the evidence supporting his or her decision, but also "the uncontroverted evidence he [or she] chooses not to rely upon, as well as significantly probative evidence he [or she] rejects." *Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996). The ALJ's narrative must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." SSR 96-8p, 1996 WL 374184, at *7. The ALJ may not "mischaracterize or downplay evidence to support her [or his] findings." *Bryant v. Comm'r, SSA*, 753 F. App'x 637, 641 (10th Cir. 2018) (citing *Talbot v. Heckler*, 814 F.2d 1456, 1463–64 (10th Cir. 1987)). And the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his [or her] position while ignoring other evidence." *Carpenter v. Astrue*, 537 F.3d 1264, 1265 (10th Cir. 2008) (citation and quotation omitted).

The rules pertaining to medical opinions require the SSA to evaluate and articulate the persuasiveness of the medical opinions. 20 C.F.R. § 404.1520c(a)-(b). In evaluating the persuasiveness of medical opinions, the SSA considers five factors: (1) supportability, (2) consistency, (3) relationship with the claimant, (4) specialization, and (5) other factors that support or contradict a medical opinion or finding. 20 C.F.R. § 404.1520c(c). While the regulations allow the ALJ some discretion in *how* he or she articulates findings on the persuasive value of medical opinion evidence, it provides no leeway as to *whether* the ALJ articulates such findings. *See* 20 C.F.R. § 404.1520c(b) (providing that the ALJ "will articulate" how persuasive he . . . finds "all of the medical opinions" in the case record). The ALJ is always required to

explain how he or she considered the first two factors: "[W]e will explain how we considered the supportability and consistency factors for a medical source's medical opinions . . . in your determination or decision." 20 C.F.R. § 404.1520c(b)(2). The ALJ is only required to explain how he or she considered the other three factors if differing medical opinions are equally well-supported and consistent with the record. 20 C.F.R. § 404.1520c(b)(3).

As the Tenth Circuit has explained,

> "[s]upportability" examines how closely connected a medical opinion is to the evidence and the medical source's explanations: "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s), the more persuasive the medical opinions will be." [20 C.F.R.] § 404.1520c(c)(1); *id.* § 416.920c(c)(1). "Consistency," on the other hand, compares a medical opinion to the evidence: "The more consistent a medical opinion(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) will be." *Id.* § 404.1520c(c)(2); *id.* § 416.920c(c)(2).

*Zhu v. Comm'r, SSA*, No. 20-3180, 2021 WL 2794533, at *6 (10th Cir. Jul. 6, 2021) (brackets and ellipses omitted).

**B. FNP Giron's Opinion**

On June 10, 2023, FNP Giron conducted a physical consultative examination of Plaintiff. AR 1358–64. At the examination, FNP Giron took Plaintiff's past medical, social, and family history. AR 1358–60. FNP Giron noted that Plaintiff reported a history of: (1) breathing problems; (2) osteoarthritis with reported symptoms including "chronic pain, inflammation, stiffness, swelling, and tingling in bilateral legs" and a pain intensity of "7/10 on most days"; (3) depression, anxiety, and PTSD; (4) diabetes; (5) insomnia; (6) "non-alcoholic fatty liver" with symptoms consisting of "blurred vision, joint swelling, and stomach problems"; and (7) "blood disease" with symptoms consisting of chronic fatigue and weight gain. *See* AR 1358–59.

During her physical examination of Plaintiff, FNP Giron noted tenderness in Plaintiff's bilateral hips, knees, and ankles. AR 1363. She also observed that Plaintiff had moderate difficulty squatting and rising from that position, and that while Plaintiff was able to stand on one foot bilaterally, she was unable to hop on one foot bilaterally. *Id.* FNP Giron later referenced these examination findings in her opinion, stating:

> With her exam, [Plaintiff] had pain to bilateral knees, hips, and ankles. Some moderate difficulty with squat and rise and she was unable to hop on either foot bilaterally. She just states for her hip, knee and ankle pain she just started physical therapy twice a week as off [sic] two days ago.

AR 1364.

Based on her examination, FNP Giron opined that Plaintiff had no functional limitations resulting from her physical impairments:

> [Plaintiff] has no limitations with sitting, standing or walking. [Plaintiff] does not need an assistive device with regard to short and long distances and uneven terrain. [Plaintiff] does not have significant limitations with lifting or carrying weight. There are no limitations on bending, stooping, crouching and squatting. There are no limitations on reaching, grasping, handling, fingering and feeling. There are no relevant visual, communicative or workplace environmental limitations.

*Id.*

### C. The ALJ's Evaluation of FNP Giron's Opinion

After summarizing FNP Giron's consultative examination and opinion, the ALJ found FNP Giron's opinion "persuasive." AR 33. In support of this conclusion, the ALJ stated:

> [FNP Giron's opinion] is persuasive; it is supported by generally normal physical exam findings other than pain to the bilateral knees, hips, and ankles. [Plaintiff] had some moderate difficulty with squat and rise and she was unable to hop on either foot bilaterally. This is consistent with [the] record as a whole documenting generally normal findings on exam, and after reviewing the medical evidence, I also find no basis for difficulty with her ability to squat and hop.

*Id*. FNP Giron's opinion is the only medical opinion regarding Plaintiff's physical limitations that the ALJ found persuasive.[6]

**D. The ALJ Failed to Sufficiently Articulate the Supportability of FNP Giron's Opinion**

Plaintiff first argues that the ALJ erred by failing to resolve inconsistencies between FNP Giron's opinion assessing no physical functional limitations and the "abnormal findings [F]NP Giron herself observed and documented" during her examination of Plaintiff. Doc. *See* 14-2 at 23–24. The Commissioner counters that FNP Giron's opinion is supported by her examination, which the Commissioner maintains showed normal physical functioning. *See* Doc. 21 at 9.

"Internal inconsistencies in a medical opinion go to the opinion's supportability." *Carroll v. Bisignano*, No. 24cv1211 KG/KK, 2026 WL 184548, at *8 (D.N.M. Jan. 23, 2026) (citation omitted), *report and recommendation adopted*, 2026 WL 374085 (D.N.M. Feb. 10, 2026). The Tenth Circuit has explained that an ALJ's supportability analysis "looks at the objective medical evidence and supporting explanations presented by a medical source to support his or her medical opinion(s)," and seeks to answer whether the examiner's opinions are "well explained" and "supported by the medical evidence he or she relied upon." *Riley v. Comm'r, SSA*, No. 25-5007, 2025 WL 3276227, at *2 (10th Cir. Nov. 25, 2025) (unpublished) (citation modified). In assessing the supportability of a medical opinion, the ALJ must explain how any material inconsistencies or ambiguities in the opinion were considered and resolved. *See* SSR 96-8p, 1996

[6] State agency medical consultants Dr. Armstrong and Dr. Debroy limited Plaintiff to light exertional work, standing and/or walking (with normal breaks) for six hours in an eight-hour workday, sitting (with normal breaks) for six hours in an eight-hour workday, occasional stooping, and frequent kneeling, crouching, and crawling. *See* AR 76–77, 101–102. The ALJ found Dr. Armstrong and Dr. Debroy's opinions were not persuasive. AR 32–33.

WL 374184, at *7. While an ALJ's explanation need not be technically perfect, the Court still must be able to follow the ALJ's reasoning. *Riley*, 2025 WL 3276227, at *2.

The Court agrees with Plaintiff that the ALJ erred in assessing the supportability of FNP Giron's opinion based on the ALJ's failure to adequately consider and resolve an inconsistency between FNP Giron's opinion and her clinical examination findings. As Plaintiff points out, FNP Giron's opinion that Plaintiff had "no limitations on bending, stooping, crouching and squatting" was inconsistent with her own documented clinical observations that Plaintiff had "moderate difficulty with squat and rise . . . and was unable to hop on either foot bilaterally." AR 1364. The ALJ acknowledged these clinical examination findings but concluded that there was "no basis for difficulty with [Plaintiff's] ability to squat and hop" based on a review of "the medical evidence." AR 33. The ALJ did not, however, identify the medical evidence she considered. As a result, the Court cannot trace the basis for the ALJ's conclusion that there was no medical support for any difficulty with Plaintiff's ability to squat and hop. The ALJ failed to address and resolve the material inconsistency in FNP Giron's opinion in a manner that allows the Court to follow her reasoning. Accordingly, the ALJ's supportability analysis is legally insufficient. *See Zambrano v. Kijakazi*, No. 20cv1356 KRS, 2022 WL 1746765, at *5 (D.N.M. May 31, 2022) ("An ALJ must, at the very least, provide an explanation that allows the reviewing court to follow his reasoning and communicates how he considered the factors of consistency and supportability for each medical source's opinions."); *Nathan H. v. O'Malley*, No. 23cv756 JMR, 2024 WL 3633790, at *8 (D.N.M. Aug. 2, 2024) ("A bare conclusion as to supportability is legally insufficient.").

The Court is not persuaded by the Commissioner's single-sentence argument that the ALJ's assessment of FNP Giron's opinion was sufficient because FNP Giron's "examination of

Plaintiff revealed normal physical functioning." *See* Doc. 21 at 9. The Commissioner fails to explain the contradiction between the normal findings in FNP Giron's final impression and the moderate difficulties she observed in Plaintiff's ability to squat, rise, and hop on physical exam.

The Court also cannot say that this error was harmless because the three jobs identified by the vocational expert—window cleaner (DOT 389.687-014), floor waxer (DOT 381.687-034), and kitchen helper (DOT 318.687-010)—each required stooping, crouching, and/or kneeling.[7] *See* SELECTED CHARACTERISTICS OF OCCUPATIONS DEFINED IN THE REVISED DICTIONARY OF OCCUPATIONAL TITLES ("SCO"), 1993, p. 132 (the kitchen helper job involves frequent stooping and crouching; floor waxer involves frequent stooping and kneeling; and window cleaner involves frequent stooping and occasional kneeling and crouching); *see also Kimes v. Comm'r, SSA*, 817 F. App'x 654, 658 (10th Cir. 2020) (unpublished) (recognizing SCO as companion publication to the Dictionary of Occupational Titles ("DOT") that may be considered at step five).

**E. The ALJ Failed to Sufficiently Articulate the Consistency of FNP Giron's Opinion**

Plaintiff also argues that the ALJ ignored other evidence in the record regarding her physical impairments that could "reasonably produce" physical functional limitations

[7] "[T]he DOT/SCO both utilize the term crouching rather than squatting; however, courts have found that the SCO's definition of crouching, i.e., bending body downward and forward by bending legs and spine, SCO, App'x C, Physical Demands, § 6, equates to squatting." *Parker v. Berryhill*, No. 17cv882, 2019 WL 653150, at *5 (M.D.N.C. Feb. 15, 2019) (citation modified); *see also Sutherland v. Comm'r of Soc. Sec. Admin.*, No. 23cv247 JAR, 2024 WL 4346725, at *3 (E.D. Okla. Sept. 30, 2024) ("While the Dictionary of Occupational Titles does not utilize the term squatting among the required functions of the jobs listed, it is easily and logically equated to either kneeling or crouching – terms used in the DOT."); *Pederzolli v. Comm'r of Soc. Sec. Admin.*, No. 17cv4705 PHX-DWL, 2019 WL 1227216, at *4 (D. Ariz. Mar. 15, 2019) ("Although squatting is not a postural-manipulative impairment recognized in Social Security terminology, crouching is recognized, and crouching is essentially synonymous with squatting.") (citation modified).

inconsistent with FNP Giron's opinion that Plaintiff had no functional limitations. *See* Doc. 14-2 at 24–25. Plaintiff points in particular to the results of lumbosacral and hand imaging studies, an abdominal MRI elastography, and a CT scan of the abdomen and pelvis. *Id.* The Court construes Plaintiff's argument as a challenge to the ALJ's consistency analysis of FNP Giron's opinion.

When evaluating the persuasiveness of a medical opinion, the ALJ must address its consistency with evidence from other medical and nonmedical sources. *See* 20 C.F.R. § 404.1520c(b)(2). Consistency "calls for a comparison between the subject medical opinion and 'the evidence from other medical sources and nonmedical sources' in the record." *Zambrano*, 2022 WL 1746765, at *5 (citation omitted). "The more consistent a medical opinion is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion will be." *Zhu*, 2021 WL 2794533, at *6 (citation modified). A bare conclusion regarding consistency is insufficient. *Zambrano*, 2022 WL 1746765, at *5.

Here, the ALJ's consistency analysis was comprised of her finding that: (1) FNP Giron's opinion was "consistent with [the] record as a whole documenting generally normal findings on exam" and (2) there was "no basis for difficulty with [Plaintiff's] ability to squat and hop" based on a review of "the medical evidence." AR 33. The ALJ's references to the "record" and "the medical evidence" signal that the ALJ compared FNP Giron's opinion with the other record evidence. But the ALJ did not specify the evidence she considered for that comparison and the failure to do so prevents the Court from engaging in meaningful judicial review. "Although ALJs need not cite to specific record evidence, they must note the evidence upon which they relied, and that evidence must be specific, and verifiably supported by the record evidence." *Garner v. Kijakazi*, No. 21cv905 GBW, 2023 WL 2727788, at *7 (D.N.M. Mar. 31, 2023). Because the ALJ failed to do so here, the Court cannot tell whether the ALJ considered any evidence that

corroborated FNP Giron's clinical examination findings regarding Plaintiff's difficulty with squatting and hopping.[8] *See Clifton*, 79 F.3d at 1010 ("[I]n addition to discussing the evidence supporting his decision, the ALJ must also discuss the uncontroverted evidence he chooses not to rely upon, as well as [the] significantly probative evidence he rejects."). In short, the ALJ failed to "build an accurate and logical bridge from the evidence to [her] conclusion." *Bowker v. Bisignano*, No. 24cv1174 MIS/KK, 2026 WL 205478, at *15 (D.N.M. Jan. 26, 2026) (citation omitted).

The Court therefore concludes that the ALJ did not adequately articulate her analysis of the consistency factor in evaluating the persuasiveness of FNP Giron's opinion. *See, e.g.*, *Frazer*, 2022 WL 682661, at *6 ("An ALJ's failure to provide any reasons for rejecting a medical source opinion beyond stating that it is inconsistent with the record is grounds for remand."); *Sankara S. v. Bisignano*, No. 2:25cv31 JHR, 2026 WL 892495, at *5 (D.N.M. Mar. 31, 2026) (determining that an ALJ's finding that a medical opinion was "not supported by and is inconsistent with the evidence as a whole" was "too vague to qualify as substantial evidence").

---

[8] This evidence included physical therapy records dating as far back as 2016 showing that Plaintiff had moderate to severe difficulty with squatting. *See, e.g.*, AR 480 (June 2016 treatment record indicating moderate difficulty with bilateral squatting and severe difficulty with unilateral squatting); AR 1144 (April 2021 treatment record indicating severe difficulty with squatting); AR 1185 (June 2021 treatment record documenting moderate difficulty with squatting). Plaintiff also consistently self-reported limitations in her ability to squat and hop in her function report and treatment records. *See* AR 322 (stating in her function report that she has a "hard time bending, squatting, and getting back up"); AR 1133–35 (April 2022 physical therapy questionnaire where Plaintiff reported "quite a bit of difficulty" with squatting and "a little bit of difficulty" with hopping); AR 1189–92 (June 2021 physical therapy questionnaire where Plaintiff reported "moderate difficulty" with squatting and "extreme difficulty" hopping); AR 1365, 1370 (January 2023 consultative mental examination where Plaintiff reported she had "limited ability to bend, stoop, or crouch" and the consultative examiner recommended Plaintiff work with her providers on a plan to improve "balance, stamina, and [] strengthening core and extremities to prevent further deterioration.").

## VI. Conclusion

The ALJ erred by failing to properly assess the persuasiveness of FNP Giron's opinion. The Court remands so that the ALJ can remedy this error. The Court does not address Plaintiff's other arguments as they "may be affected by the ALJ's treatment of this case on remand." *Watkins*, 350 F.3d at 1299.

IT IS THEREFORE ORDERED that Plaintiff's Motion to Reverse and Remand (Doc. 14) is GRANTED.

IT IS FURTHER ORDERED that the Commissioner's final decision is REVERSED, and this case is REMANDED for further proceedings in accordance with this opinion.

JENNIFER M. ROZZONI
United States Magistrate Judge
Presiding by Consent